IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
COLUMBIA DIVISION

| | |
|---|---|
| JEROME S. BARRETT, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 1:12-0178 |
| ) | |
| JASON SAUNDERS, MENTAL HEALTH, ) | Chief Judge Haynes |
| PROGRAM SPECIALIST II; ) | |
| BRUCE COATES, CLASSIFICATION ) | |
| COORDINATOR; SGT. CYNTHIA CLARK, ) | |
| VISITATION SUPERVISOR AND ) | |
| GRIEVANCE CHAIRPERSON; ) | |
| REUBEN HODGE, ASSISTANT ) | |
| COMMISSIONER OF OPERATIONS; ) | |
| CANDACE WHISMAN, DIRECTOR, ) | |
| SENTENCE MANAGEMENT SERVICES, ) | |
| TENNESSEE DEPARTMENT OF ) | |
| CORRECTIONS, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM

Plaintiff, Jerome S. Barrett, also known as Abdullah Jihad Abdul Jaami, a state prisoner originally filed this *pro se* action and his application to proceed *in forma pauperis*, in the United States District Court for the Western District of Tennessee. That Court granted Plaintiff's application to proceed as a pauper, but transferred the action to this District as the appropriate venue. This action is before the Court for an initial review pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(a), and *McGore v. Wrigglesworth*, 114 F.3d 601 (6th Cir. 1997), *reversed on other grounds by Jones v. Bock*, 549 U.S. 199 (2007).

## I. Analysis of the Complaint

Plaintiff's claims arise from his prison classification based upon his 1974 state conviction. According to his complaint, in 1974, Plaintiff was indicted for "rape," and ultimately pleaded guilty to the indictment, and more specifically to the charge of "unlawful carnal knowledge of a woman forcibly and against her will." (Indictment and Acceptance of Guilty Plea, Jan. 31, 1974, Docket Entry No. 1-1, at 21.) Plaintiff received a sentence of three years' imprisonment on that conviction.

In 1988, Doris K. Hinds, an administrative assistant in the Tennessee Department of Correction ("TDOC") filed an affidavit with TDOC's records on Plaintiff. The Hinds affidavit cited Tenn. Code Ann. §§ 39-3705 and 39-3706 as the relevant statutes to which Plaintiff pled guilty in 1974. Hinds's affidavit states, in relevant part:

> A copy of the original Indictment and Conviction Order, out of Shelby County Criminal Court, in Docket Number B-36512, in which Mr. Barrett was indicted, convicted and sentenced for the offense of Carnal Knowledge of a Woman Forcibly and Against Her Will. The Department of Correction Sentence Computation Division and Records Division must rely upon Tennessee Code Annotated (TCA) to define offenses for which sentences are imposed by the Courts. In this instance, reference is made to TCA 38-3705 (now TCA 39-2-604) and 39-3706 (now TCA 39-3-607 [sic]), which were the Statutes referencing Carnal Knowledge, at the time of Mr. Barrett's offense and conviction. (Attachment 3).
>
> **TCA 39-3705 is defined as Carnal Knowledge of Child under twelve years.**
> TCA 39-3706 is defined as Carnal Knowledge of Female between twelve and eighteen not amounting to Rape. As the Indictment in B-36512 only made reference to Carnal Knowledge of a woman, TCA 39-3705 was not applicable; therefore, the offense was reflected on Mr. Barrett's records as defined in TCA 39-3706.

(Docket Entry No. 1-1, at 30) (emphasis added). Plaintiff's TDOC record also contains an official TOMIS Offender Sentence letter dated October 8, 2010, stating that Plaintiff's offense of conviction in 1974 is "Carnal Knowledge (12–18)." (Docket Entry No. 1-1, at 33.) This letter also reflects a three-year sentence for this offense.

The facts underlying Plaintiff's 1974 conviction are not in the record, but Plaintiff insists that

-2-

this TDOC classification is incorrect, because the victim was a twenty-nine-year old woman.[1] Plaintiff alleges that he became aware of this classification problem and in 2009 attempted to correct his classification. Plaintiff informed a corrections officer, who recorded Plaintiff's request. Plaintiff alleges that he was not informed of any continuing problem at that time.

According to his complaint, on April 18, 2011, Defendant Jason Saunders, a mental health specialist, contacted Plaintiff to sign form CR-3619, "Contact Visitation with Minors Agreement." This agreement applies to inmates convicted of a sexual offense involving a minor, and restricts such inmates from contact visits with minors except under the circumstances described in the form. Plaintiff refused to sign the form as inapplicable to him. Plaintiff also sent letters to Defendant Saunders and Defendant Bruce Coates, Classification Coordinator about his erroneous classification of the 1974 conviction. Plaintiff allegedly informed Defendant Coates that Defendant Saunders' actions were inconsistent with prison policy.

In September 2011, Plaintiff alleges that Aries Williams, his niece, applied for visitation, but was erroneously and incorrectly denied twice and Plaintiff's brother was also denied the opportunity to visit. Plaintiff filed grievances against Defendant Sergeant Cynthia Clark about these denials that Plaintiff alleges were arbitrary and capricious as well as in violation of TDOC's regulations and policy.

In October 2011, Plaintiff received a visit from this niece whom Plaintiff's mother brought to see Plaintiff. Plaintiff alleges that "abruptly and without warning," Plaintiff was denied a contact

---

[1] The Court observes that Plaintiff alleged that he was indicted for "rape" and pleaded guilty to the indictment, and specifically to "unlawful carnal knowledge of a woman forcibly and against her will." (Docket Entry No. 1-1, at 21.) At that time, under Tennessee law, the crime of rape was defined by statute as "the unlawful carnal knowledge of a woman, forcibly and against her will." Tenn. Code Ann. § 39-3701 (1955) (amended by Tennessee Public Acts 1979, p. 1065, ch. 415).

-3-

visit with his family members, and instead was placed in the "non-contact booth." (Complaint at 7.) Plaintiff alleges that the reason for the non-contact visit was his refusal to sign form CR-3619. Plaintiff contends that his family members were told that the reason for the non-contact restriction was because Plaintiff was classified as having committed a violent sexual offense against a minor.

According to Plaintiff, Defendant Clark retaliated against him for filing grievances related to his niece's visitation applications, by implementing the no-contact rule and otherwise interfering with visits from Plaintiff's non-minor family members. Plaintiff also alleges that a copy of the form CR-3619 that Defendant Saunders sent to Defendant Clark contains a writing: "I/M [Barrett] refused to sign document and he has visit with his family and they have minors. Please put non-contact visitation in place." (Docket Entry No. 1-1, at 21.)

Plaintiff also alleges that Patrick Frogge, his attorney, tried to visit him twice in October 2011. Plaintiff alleges that the prison officials refused to permit Frogge to visit. Plaintiff implies that Defendant Clark was responsible for his attorney's inability to visit him on two occasions, and that the interference with Frogge's visit was based on retaliatory motives. Plaintiff alleges prejudice from these denials given that these attempted visits were prior to oral argument on the Tennessee Court of Criminal Appeals.

Plaintiff also wrote to Reuben Hodge, Assistant Commissioner of Operations for TDOC, seeking correction of the classification of his 1974 conviction. Plaintiff received a response from Defendant Candace Whisman, Director of Sentence Management Services, in a letter dated December 12, 2011. Whisman's letter stated that, at the time of Plaintiff's conviction, "there were four distinct offenses in the statute -- TCA § 39-3701 for Rape, TCA § 37-3704 for Carnal Knowledge by Administering Drugs, TCA § 39-3705 for Carnal Knowledge of a Child Under Twelve Years, and TCA § 39-3706 for Carnal Knowledge of a Female between Twelve and Eighteen

not Amounting to Rape. TDOC does have your offense listed as Carnal Knowledge (12–18) in line with the court's order. . . . Your offense will remain listed as it currently is." (Docket Entry No. 1-1, at 16.)

Plaintiff alleges that Defendants' acts violated state law and prison policy as well as his rights under § 1983 for denial of attorney visits, violation of his right to due process, violation of state-created liberty interests, "abuse of authority under color of state law," denial of equal protection, violation of the constitutional prohibition against cruel and unusual punishment, and "irrational social policy." (Docket Entry No. 1, Complaint, at 21–22.) For relief, Plaintiff seeks injunctive and declaratory relief and compensatory, punitive and nominal damages as well as "criminal sanctions" against Defendants.

## II. Conclusions of Law

When a prisoner initiates a civil action *in forma pauperis* or seeks relief against a governmental entity, officer, or employee, the trial court must review the complaint and dismiss the complaint, or any portion of it, if the court determines that the complaint is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. See 28 U.S.C. §§ 1915(e)(2), 1915A(b)(1), (2); *McGore*, 114 F.3d at 604.

The Sixth Circuit has confirmed that the dismissal standard articulated by the Supreme Court in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), "governs dismissals for failure to state a claim under these statutes because the relevant statutory language tracks the language in Rule 12(b)(6)." *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010). Thus, to survive dismissal for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v.*

*Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "[A] district court must (1) view the complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual allegations as true." *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (citations omitted)).

Although *pro se* pleadings are to be held to a less stringent standard than formal pleadings drafted by lawyers, *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972); *Jourdan v. Jabe*, 951 F.2d 108, 110 (6th Cir. 1991), the courts' "duty to be 'less stringent' with *pro se* complaints does not require us to conjure up unpled allegations." *McDonald v. Hall*, 610 F.2d 16, 19 (1st Cir. 1979) (citation omitted).

To state a claim under § 1983, a plaintiff must "identify a right secured by the United States Constitution and deprivation of that right by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). Here, the named defendants, Saunders, Clark, Coates, Whisman, and Hodges, are clearly state actors.

As to whether Plaintiff's factual allegations state a violation of a federal right, "[t]he law is well settled in this Circuit that retaliation under color of law for the exercise of First Amendment rights is unconstitutional[.]" *Zilich v. Longo*, 34 F.3d 359, 365 (6th Cir. 1994). Likewise, "government actions, which standing alone do not violate the Constitution, may nonetheless be constitutional torts if motivated in substantial part by a desire to punish an individual for exercise of a constitutional right." *Thaddeus-X v. Blatter*, 175 F.3d 378, 386 (6th Cir. 1999) (citing, among others, *Crawford-El v. Britton*, 523 U.S. 574 (misdirection of personal

-6-

belongings may support a claim of retaliation for exercise of First Amendment rights). In the Sixth Circuit, a First Amendment retaliation claim "essentially entails three elements: (1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two—that is, the adverse action was motivated at least in part by the plaintiff's protected conduct." *Thaddeus-X*, 175 F.3d at 394 (citations omitted).

As applied here, Plaintiff alleges that he engaged in protected conduct by filing prison grievances about restrictions on Plaintiff's visitation privileges. Plaintiff was denied visitations. A temporal relationship between these events can give rise to an inference that there is a causal connection between them. Yet, Plaintiff's appeals of the denials of visitation, do not reflect any deterrent effect upon him from filing future grievances against the official in charge of visitation at the prison. Thus, the Court concludes that Plaintiff has not stated a retaliation claim against Defendant Clark.

Plaintiff's claim against Defendant Coates is based upon Coates's alleged refusal to uphold a prison grievance. This is not an actionable claim under § 1983. *See, e.g., Lee v. Mich. Parole Bd.*, 104 F. App's 490, 493 (6th Cir. 2004) ("Section 1983 liability may not be imposed simply because a defendant denied an administrative grievance or failed to act based upon information contained in a grievance.").

Plaintiff's claims against Defendants Saunders, Hodge and Whisman are based on these Defendants' failures to correct erroneous documents in Plaintiff's correctional file despite Plaintiff's formal request to do so. Plaintiff asserts that he has "a constitutional right to have . . . erroneous information expunged from his institutional files" (Docket Entry No. 1, Complaint at

-7-

Case 1:12-cv-00178   Document 16   Filed 03/20/13   Page 7 of 11 PageID #: 135

28) (citing *Paine v. Baker*, 595 F.2d 197 (4th Cir.), *cert. denied*, 444 U.S. 925 (1979), and *McCrery v. Mark*, 823 F. Supp. 288 (E.D. Pa. 1993). In *Paine*, a state prisoner filed an action against prison officials to inspect his prison file. The district court granted judgment for the plaintiff. On appeal, the Fourth Circuit held that a state prisoner has a limited due-process right to have erroneous information expunged from his prison file, but that the plaintiff there failed to show that his due-process right had been violated. More specifically, the court held that a claim of "constitutional magnitude" to correct allegedly incorrect prejudicial information contained in a prisoner's institutional file "is raised where a prisoner alleges (1) that information is in his file, (2) that the information is false, and (3) that it is relied on to a constitutionally significant degree." *Paine*, 595 F.2d at 201. *McCrery* cited *Paine*, but found the plaintiff there also failed to state a claim based on the inclusion of erroneous and prejudicial information in his correctional file, because that plaintiff could not show that the false information in his file had been relied on to any degree, "let alone 'to a constitutionally significant degree.'" *McCrery*, 823 F. Supp. at 293 (quoting *Paine*, 595 F.2d at 201).

Citing *Paine*, the Sixth Circuit stated that "[a] person may state a constitutional claim if [a government agency] disseminates false information, after a proper request for correction has been made, and the false information is used to deprive the person of liberty." *Pruett v. Levi*, 622 F.2d 256 (6th Cir. 1980) (per curiam). Yet, "the mere retention of inaccurate information in an inmate's file does not amount to a constitutional violation." *Carson v. Little*, 875 F.2d 862 (Table), 1989 WL 40171 (6th Cir. April 18, 1989) (citing *Pruett v. Levi*, 622 F.2d 256, 258 (6th Cir. 1980) (per curiam)). *Pruett* has primarily been cited in district courts within the Sixth Circuit to deny relief on the basis that a prisoner who claims that an error in his record prejudiced his parole review does not state a cognizable claim, unless the relevant state system creates a

liberty interest in parole. *See, e.g., Taylor v. Graves*, No. 2:12-cv-144, 2012 WL 1577235, at *4 (W.D. Mich. May 3, 2012) (finding that, because the plaintiff had no liberty interest in parole under Michigan law, he failed to state a due-process claim based on an error in his correctional record); *Buckines v. Mich. Parole Bd.*, No. 1:08-cv-17, 2008 WL 696438, at *1 (W.D. Mich. March 12, 2008) (same).

Here, Plaintiff clearly alleges that his correctional record contains false information, and that he has exhausted his administrative remedies to correct the false information. The question is whether Plaintiff's allegations of false information has been or likely will be relied on in a constitutionally significant manner. In this regard, Plaintiff alleges claims that the false information was relied upon to deny Plaintiff contact visits with his family members.[2]

Given this effect, the Court concludes Plaintiff states an actionable claim. To prevail on his procedural due-process claim, Plaintiff must demonstrate that a liberty or property interest was taken from him in a procedurally deficient manner. *See Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 570–71 (1972). Some liberty interests arise from the Due Process Clause and others arise from state laws and regulations. *Sandin v. Conner*, 515 U.S. 472, 483–84 (1995). The Due Process Clause does not itself guarantee all prison visitation. *Ky. Dep't of Corrs. v. Thompson*, 490 U.S. 454, 460-61 (1989) (noting that properly imposed ban on contact visits will survive claims of Due Process violation); *Block v. Rutherford*, 468 U.S. 576, 588 (1984) (upholding a blanket prohibition on contact visits to pretrial detainees because it was an "entirely reasonable, nonpunitive response" to legitimate security concerns). *See also Overton v. Bazzetta*,

---

[2] Apparently the non-contact visit with Plaintiff's mother and niece was the result either of an erroneous reading of form CR-3619, or an erroneous assumption that Plaintiff's niece was a minor. Plaintiff does allege that he has family members who are children, who have visited him in the past.

539 U.S. 126, 137 (2003) (citing *Sandin* and noting that a limited "withdrawal of visitation privileges . . . [is] a regular means of effecting prison discipline . . . [and] is not a dramatic departure from accepted standards for conditions of confinement").

As to Tennessee prison regulations on contact visitation with minors, in *Sandin*, the Supreme Court held that protectable interests likely arise from "atypical and significant hardship[s] . . . in relation to the ordinary incidents of prison life." 515 U.S. at 484. Numerous courts have held that a loss of visitation privileges is one of the "ordinary incidents" of prison confinement. *See, e.g., Phillips v. Norris*, 320 F.3d 844, 847 (8th Cir. 2003) (citing cases); *see also Bazzetta*, 124 F.3d at 779 (no liberty interest in non-contact visitation). Under *Sandin* and *Bazzetta*, the Court concludes that Tennessee's regulations on a particular type of prison visitation do not create a liberty interest.

The Court concludes that Plaintiff does not have a protected liberty interest in receiving contact visits, and in particular does not have a protected liberty interest in receiving contact visits from non-minor children who are not his own biological children. *Cf. Henry v. Dep't of Corrs.*, 131 F. App'x 847 (3d Cir. 2005) (upholding dismissal of the plaintiff's due-process claim on the basis that a permanent restriction to non-contact visitation did not implicate any liberty interest created by Pennsylvania law). The Court concludes that Plaintiff fails to state a procedural due process claim for the denial of contact visits.

Finally, "there is no federal constitutional liberty interest in having state officers follow state law or prison officials follow prison regulations." *Phillips*, 320 F.3d at 847. Plaintiff's complaints based upon Defendants' failure to comply with prison regulations therefore fail to state a claim under § 1983.

## IV. Conclusion

-10-

In sum, the Court concludes that Plaintiff fails to state cognizable claims under § 1983 against Defendants Coates, Saunders, Hodges, and Whisman. A plaintiff may pursue claims based on state law in this Court only under the supplemental jurisdiction authorized by 28 U.S.C. § 1367, which is premised on the existence of original jurisdiction on the basis of properly pleaded federal claims. Accordingly, the Court does not have supplemental jurisdiction over any state-law claims that are asserted against these Defendants. All claims against them are therefore subject to dismissal.

Because the complaint states a colorable claim for retaliation against Defendant Clark, the Court will permit that claim to proceed. An appropriate order is filed herewith.

ENTERED this the 19th day of February, 2013.

WILLIAM J. HAYNES, JR.
Chief Judge
United States District Court